IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 6, 2013

IN RE KALIYAH S. ET AL.

Appeal from the Juvenile Court for Bradley County
No. J-08-435      Daniel Swafford, Judge

No. E2013-01352-COA-R3-PT-FILED-FEBRUARY 28, 2014

This is a termination of parental rights case, focusing on Kaliyah S. and Jaya P. ("the Children"), the minor children of Kayla S. ("Mother"). In November 2010, the Children were taken into protective custody by the Tennessee Department of Children's Services ("DCS") and placed in foster care. DCS filed a petition to terminate the parental rights of Mother and Jaya's father, Josh P., on November 30, 2010. The petition alleged severe child abuse as the sole ground for termination. DCS filed an amended petition in May 2011, which also named Kaliyah's father, Rontez L. ("Father"), and alleged that his parental rights should be terminated on the statutory ground of abandonment by wanton disregard. Father was incarcerated at the time the amended petition was filed. Following a bench trial, the trial court granted the petition as to Mother and Josh P. upon finding that DCS had proven the ground of severe child abuse by clear and convincing evidence. The court also found clear and convincing evidence that Father had abandoned Kaliyah by engaging in conduct exhibiting wanton disregard for her welfare prior to his incarceration. When making its ruling, the trial court concluded that DCS was not required to make reasonable efforts to assist Father in reunification because DCS sufficiently proved the statutory ground of abandonment alleged against him. The court also found that termination of the parental rights of all three respondents was in the Children's best interest. Father has appealed. We reverse the trial court's determination that DCS was relieved of the requirement of making reasonable efforts of reunification with regard to Father and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., joined. D. MICHAEL SWINEY, J., filed a separate dissenting opinion.

Wilton Marble, Cleveland, Tennessee, for the appellant, Rontez L.

Robert E. Cooper, Jr., Attorney General and Reporter, and Leslie Curry, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

## OPINION

### I. Factual and Procedural Background

Mother is a parent of two minor children who are the focus of this proceeding: Kaliyah S., now age four, and Jaya P., now age two. The Children were removed from the home of Mother and Josh P., father of Jaya. At the time, DCS apparently believed that Josh P. was also Kaliyah's father because his name was listed on her birth certificate. Upon discovering Kaliyah's true paternity, the assigned DCS caseworker located and met with Father while he was incarcerated in the Bradley County Jail. DCS prepared a permanency plan for Father during his incarceration. Father agreed to sign the plan. DCS then filed its amended petition in May 2011, seeking to terminate Father's parental rights on the statutory ground of abandonment by wanton disregard.

Father was released from custody on November 29, 2011, less than one week before the termination of parental rights trial began. Father testified at the hearing regarding his criminal record of drug and domestic violence charges as well as his prior incarcerations. Father explained that he first saw Kaliyah four or five months after her 2008 birth. He was then incarcerated from February 2009 until August 2009. Subsequent to his release, Father saw Kaliyah with some degree of frequency until he was re-incarcerated in February 2010. According to Father, he was released from custody again in July 2010 but did not see Kaliyah as frequently thereafter. Father was arrested again in December 2010, remaining incarcerated until November 2011.

Significantly, the trial court concluded that DCS was not required to make reasonable efforts to assist Father regarding reunification with the child because the statutory ground of abandonment by wanton disregard had been proven. The court specifically found clear and convincing evidence that Father had abandoned Kaliyah by engaging in conduct exhibiting wanton disregard for her welfare prior to his incarceration and that termination was in Kaliyah's best interest. The trial court accordingly terminated Father's parental rights. Father timely appealed to this Court.

## II. Issues Presented

Father presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by finding that DCS was not required to make reasonable efforts to reunify Father with his child, Kaliyah S., prior to terminating his parental rights.

2. Whether DCS made reasonable efforts to reunify Father with his child prior to terminating his parental rights.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *Id.*; Tenn. R. App. P. 13(d). Questions of law, however, are reviewed *de novo* with no presumption of correctness. *In re Bernard T.*, 319 S.W.3d 586, 597 (Tenn. 2010). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has instructed:

In light of the constitutional dimension of the rights at stake in a termination proceeding under Tenn. Code Ann. § 36–1–113, the persons seeking to terminate these rights must prove all the elements of their case by clear and convincing evidence. Tenn. Code Ann. § 36–1–113(c); *In re Adoption of A.M.H.*, 215 S.W.3d at 808–09; *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The purpose of this heightened burden of proof is to minimize the possibility of erroneous decisions that result in an unwarranted termination of

or interference with these rights. *In re Tiffany B.*, 228 S.W.3d 148, 155 (Tenn. Ct. App. 2007); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005). Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings. *In re Valentine*, 79 S.W.3d at 546; *State Dep't of Children's Servs. v. Mims* (In re N.B.), 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008).

*In re Bernard T.,* 319 S.W.3d at 596.

## IV.  Requirement of Reasonable Efforts

Father asserts that the trial court erred in its ruling that DCS was relieved of its responsibility to make reasonable efforts to assist him in matters of family preservation and reunification.  The trial court found that reasonable efforts were not required in this case because DCS proved the allegations contained in the termination petition that Father had abandoned Kaliyah by engaging in conduct exhibiting wanton disregard for her welfare prior to his incarceration.  Father contends that this issue has previously been addressed by this Court in *In re B.L.C.*, No. M2007-01011-COA-R3-PT, 2007 WL 4322068 at *9-10 (Tenn. Ct. App. Dec. 6, 2007), wherein this Court held that DCS maintained a duty to exercise reasonable efforts until a court of competent jurisdiction determined that the parent subjected the child to aggravated circumstances as defined by statute.  In support of his argument, Father posits that because no such finding was made with regard to him until the termination of parental rights hearing, DCS still had a duty to exercise reasonable efforts to assist him in reunification. While recognizing the conflicting conclusions previously reached as to this issue by various panels of this Court, we agree with Father.

## A.  Applicable Statutory Provisions

Tennessee Code Annotated § 37-1-166 (Supp. 2013) states, in pertinent part:

(g)(1) As used in this section, "reasonable efforts" means the exercise of reasonable care and diligence by the department to provide services related to meeting the needs of the child and the family.  In determining reasonable efforts to be made with respect to a child, as described in this subdivision (g)(1), and in making such reasonable efforts, the child's health and safety shall be the paramount concern.

(2) Except as provided in subdivision (g)(4), reasonable efforts shall be made to preserve and reunify families:

> (A) Prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and

> (B) To make it possible for a child to safely return to the child's home.

(3) If continuation of reasonable efforts of the type described in subdivision (g)(2) is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child.

(4) Reasonable efforts of the type described in subdivision (g)(2) shall not be required to be made with respect to a parent of a child *if a court of competent jurisdiction has determined that*:

> (A) The parent has subjected the child that is the subject of the petition or any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home to aggravated circumstances as defined in § 36-1-102;

. . .

(5) If reasonable efforts of the type described in subdivision (g)(2) are not made with respect to a child as a result of a determination made by a court of competent jurisdiction in accordance with subdivision (g)(4):

> (A) A permanency hearing shall be held for the child within thirty (30) days after the determination; and

> (B) Reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child.

(Emphasis added.)

Tennessee Code Annotated § 36-1-102(9) (2010) defines "aggravated circumstances" as "*abandonment*, abandonment of an infant, aggravated assault, aggravated kidnapping, especially aggravated kidnapping, aggravated child abuse and neglect, aggravated sexual exploitation of a minor, especially aggravated sexual exploitation of a minor, aggravated rape, rape, rape of a child, incest, or severe child abuse, as defined at § 37-1-102." (emphasis added). Tennessee Code Annotated § 36-1-102(1)(A) defines "abandonment" as:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

(ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department;

(iii) A biological or legal father has either willfully failed to visit or willfully failed to make reasonable payments toward the support of the child's mother during the four (4) months immediately preceding the birth of the child; provided, that in no instance shall a final order terminating the parental rights

of a parent as determined pursuant to this subdivision (1)(A)(iii) be entered until at least thirty (30) days have elapsed since the date of the child's birth;

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or

(v) The child, as a newborn infant aged seventy-two (72) hours or less, was voluntarily left at a facility by such infant's mother pursuant to § 68-11-255; and, for a period of thirty (30) days after the date of voluntary delivery, the mother failed to visit or seek contact with the infant; and, for a period of thirty (30) days after notice was given under § 36-1-142(e), and no less than ninety (90) days cumulatively, the mother failed to seek contact with the infant through the department or to revoke her voluntary delivery of the infant . . .

B.  Statutory Interpretation

Our appellate review of the issue presented engages an analysis of proper statutory interpretation.  As our Supreme Court has explained:

> Our "primary goal in interpreting statutes is 'to ascertain and give effect to the intention and purpose of the legislature.'" *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000) (quoting *Gleaves v. Checker Cab Transit Corp.*, 15 S.W.3d 799, 802 (Tenn. 2000)).  When the statutory language is unambiguous, we apply its plain and ordinary meaning. *Planned Parenthood of Middle Tenn. v. Sundquist*, 38 S.W.3d 1, 24 (Tenn. 2000).  When the statutory language is ambiguous, we must look to other sources, such as legislative history, to determine the intent and purpose of the legislature. *Id.*

*Conley v. State*, 141 S.W.3d 591, 595 (Tenn. 2004); *see also Burke v. Langdon*, 190 S.W.3d 660, 662 (Tenn. Ct. App. 2005).

In this instance, the language of the statute is clear and unambiguous.  A plain reading of the statute demonstrates that reasonable efforts to preserve the family are required to be

exercised by DCS both before the child is removed from a parent and after such removal. *See* Tenn. Code Ann. §37-1-166(g)(2). If aggravated circumstances are found to exist due to, *inter alia*, abandonment or abuse, DCS can be relieved of its duty to exercise reasonable efforts toward family reunification. *See* Tenn. Code Ann. § 36-1-102(9) and § 37-1-166(g)(4). A court of competent jurisdiction *must make a determination* that such aggravated circumstances exist, however, before DCS is relieved of its duty to exercise reasonable efforts to assist the parent. *Id.* Once a court makes such a determination, a permanency hearing must be held within thirty days, and reasonable efforts by DCS to permanently place the child shall commence. *See* Tenn. Code Ann. § 37-1-166(g)(5).

## C. Relevant Precedent

In *In re B.L.C.*, this Court was confronted with a factual situation similar to the action at bar, wherein the trial court had concluded that DCS was not required to make reasonable efforts to assist the mother in reunification because the statutory ground alleged and proven against her was willful abandonment. *See* 2007 WL 4322068 at *2. The mother appealed the trial court's determination. On behalf of this Court, Judge (now Justice) Lee explained that although abandonment does constitute an "aggravated circumstance" pursuant to Tennessee Code Annotated § 37-1-166(g)(4)(A), no prior case had addressed the question of "exactly when DCS is relieved of its statutory duty to make reasonable efforts." *Id.* at *7. This Court further elucidated:

> Under ordinary circumstances, the law governing termination of parental rights proceedings imposes upon DCS the responsibility to make reasonable efforts to reunify children and their parents after DCS removes the children from the parents' home. *In re Tiffany B.*, 228 S.W.2d 148, 157-58 (Tenn. Ct. App. 2007). This court has discussed and emphasized the importance of DCS's role in this regard on numerous occasions, noting that "[i]n many circumstances, the success of a parent's remedial efforts is intertwined with the efforts of [DCS's] staff to provide assistance and support." *In re C.M.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *7 (Tenn. Ct. App. M.S., filed Mar. 9, 2004); *see also In re Giorgianna H.*, 205 S.W.3d 508, 518 (Tenn. Ct. App. 2006) (stating "The success of a parent's remedial efforts generally depends on the Department's assistance and support."); *In re J.A.W.*, No. M2007-00756-COA-R3-PT, 2007 WL 3332853, at *4 (Tenn. Ct. App. E.S., filed Nov. 8, 2007); *In re Randall B.*, No. M2006-00055-COA-R3-PT, 2006 WL 2792158, at *5-6 (Tenn. Ct. App. M.S., filed Sept. 28, 2006). The efforts required of DCS are reasonable efforts in light of the specific circumstances presented, not "herculean" efforts. *Id*.

The Tennessee General Assembly, however, has relieved DCS of its duty to provide reasonable efforts to assist parents from whose homes it has removed their children under certain statutorily defined circumstances, including when a court of competent jurisdiction has determined, among other things, that a parent has committed murder, voluntary manslaughter, felony assault, aggravated or especially aggravated kidnapping, aggravated child abuse, aggravated or especially aggravated sexual exploitation of a minor, rape, incest, severe child abuse, or "abandonment," as defined by Tenn. Code Ann. § 36-1-102(1). These circumstances relieving DCS of its responsibilities are labeled "aggravated circumstances" by the statute, Tenn. Code Ann. § 37-1-166(g), which further provides in relevant part as follows:

> (2) Except as provided in subdivision (g)(4), reasonable efforts shall be made to preserve and reunify families:
>
> (A) Prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child's home; and
>
> (B) To make it possible for a child to safely return to the child's home.
>
> (3) If continuation of reasonable efforts of the type described in subdivision (g)(2) is determined to be inconsistent with the permanency plan for the child, reasonable efforts shall be made to place the child in a timely manner in accordance with the permanency plan, and to complete whatever steps are necessary to finalize the permanent placement of the child.
>
> (4) Reasonable efforts of the type described in subdivision (g)(2) shall not be required to be made with respect to a parent of a child if a court of competent jurisdiction has determined that:
>
> (A) The parent has subjected the child that is the subject of the petition or any sibling or half-sibling of the child who is the subject of the petition or any other child residing temporarily or permanently in the home to aggravated circumstances as defined in § 36-1-102;
>
> . . .

Tennessee Code Annotated § 36-1-102(9) defines "aggravated circumstances" to mean "*abandonment*, abandonment of an infant, aggravated assault, aggravated kidnapping, especially aggravated kidnapping, aggravated child abuse and neglect, aggravated sexual exploitation of a minor, especially aggravated sexual exploitation of a minor, aggravated rape, rape, rape of a child, incest, or severe child abuse, as defined at § 37-1-102." (emphasis added). As is seen from the italicized portion of the statute cited above, its plain language relieves DCS of its responsibility to make reasonable efforts *only if* a court of competent jurisdiction has made a determination that aggravated circumstances exist, along with the other statutory requirements. The statute does not allow DCS to take the approach of doing nothing on a parent's case, providing no assistance, in the hopes that a court will later make a finding of abandonment that retroactively "forgives" DCS's lack of efforts, particularly when, as is the case here, DCS's failure to make a reasonable effort arguably was a significant factor in enabling DCS to argue that Mother abandoned her children.

We believe the most reasonable and natural interpretation of the statute at issue is that DCS is relieved of its responsibility to make reasonable efforts to assist in the preservation and reunification of families that the State has decided to separate *at such time* that a court of competent jurisdiction makes the required determination of aggravated circumstances, and not before. Prior to such a determination, DCS must continue to make reasonable efforts. To hold otherwise would be to create an unacceptable level of uncertainty among DCS's staff members as to whether, and when, they are required to exercise reasonable efforts, because the answer to that question would not be clear until a trial court, or possibly an appellate court, rules on the issue of abandonment. A "wrong guess" on DCS's part would create an unacceptably long delay in an area of the law, termination of parental rights, where expediency is of particular importance. We also make this determination mindful of a parent's fundamental constitutional rights in this regard, and the profound, permanent consequences of an order terminating a person's parental rights.

In summary, we do not agree with DCS's argument that it had no duty in this case to make reasonable efforts to assist Mother from the time it took custody of the children until DCS filed its termination petition as a result of the trial court's much later finding of abandonment. If, in a termination case, DCS believes it appropriate to be relieved of the responsibilities generally placed upon it by Tenn. Code Ann. § 37-1-166, it should petition the trial court for a "determination" described and required by Tenn. Code Ann. § 37-1-166(g)(4).

-10-

Of course, what constitutes "reasonable" efforts on DCS's part is defined and determined by the circumstances; in some situations a parent's conduct may make relatively minimal efforts "reasonable" under the circumstances. In such situations, or when DCS concludes that a parent is himself or herself making no efforts, or that efforts at a reunification attempt will be useless, several avenues will be available to DCS to obtain the judicial determination required by the statute. DCS may change the goal in parent's permanency plan, thereby triggering judicial review of the change, or DCS may proceed to file a termination petition. In any event, both the parents and the trial court will be placed on notice of DCS's position that it should be relieved of further efforts, and of the facts and reasons supporting this position. It will further be clear to all parties involved, by virtue of the trial court's determination, exactly at what point in time DCS is relieved from making reasonable efforts otherwise generally required.

*Id.* at *8-10.

This reasoning has been followed by numerous cases, including a published decision from the Middle Section of this Court: *In re M.O.*, 173 S.W.3d 13, 21 n.12 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. May 16, 2005) (concluding that DCS could not "take advantage of the exception in Tenn. Code Ann. § 37-1-166(g)(4)(A)" when the juvenile court in adjudicating the child dependent and neglected as to the father had stopped short of finding that the father had committed severe child abuse). *See also In re Christopher S.*, No. E2012-02349-COA-R3-PT, 2013 WL 5436673 at *14 (Tenn. Ct. App. Sept. 27, 2013) (concluding that DCS was not required to make reasonable efforts toward reunification as a result of the juvenile court's prior ruling of dependency and neglect based on severe child abuse); *In re Steven P.D.*, No. W2011-02489-COA-R3-PT, 2012 WL 3025151 at *9 (Tenn. Ct. App. July 25, 2012) (citing *In re B.L.C.* for the principle that DCS cannot be relieved of its duty to make reasonable efforts until after a court of competent jurisdiction finds aggravated circumstances); *In re Jada T.L.P.*, No. E2011-00291-COA-R3-PT, 2011 WL 3654486 at *4 (Tenn. Ct. App. Aug. 19, 2011) (also citing *In re B.L.C.* for the same principle); *In re Destiny H.A.A.M.M. M.*, No. E2010-01367-COA-R3-PT, 2011 WL 319409 at *14 (Tenn. Ct. App. Jan. 27, 2011) ("[A] parent is provided due process protection by the requirement that DCS seek a court determination that one of the circumstances in Tenn. Code Ann. § 37-1-166(g)(4) exists—if the trial court determines that relieving DCS of reasonable efforts is unfair, it can refuse to grant such a request."); *In re Keisheal N.E.*, No. M2009-02527-COA-R3-PT, 2010 WL 2176104 at *13 (Tenn. Ct. App. May 28, 2010) (citing *In re B.L.C.* for the principle that DCS cannot be relieved of its duty to make reasonable efforts until after a court of competent jurisdiction finds aggravated circumstances); *In re A.R.*, No.

M2007-00618-COA-R3-PT, 2007 WL 4357837 at \*12 (Tenn. Ct. App. Dec. 13, 2007) (also citing *In re B.L.C.* for the same conclusion).

DCS urges this Court to affirm the trial court's ruling that DCS was relieved of making reasonable efforts in this case because it proved the allegations of the termination petition that Father abandoned Kaliyah by engaging in conduct exhibiting wanton disregard for her welfare prior to his incarceration. DCS relies upon a published decision from the Western Section of this Court in *In re Arteria H.*, 326 S.W.3d 167, 183 (Tenn. Ct. App. 2010), *perm. app. denied* (Tenn. Oct. 14, 2010), wherein the father's parental rights were terminated based upon two statutory grounds: (1) pursuant to Tennessee Code Annotated § 36-1-113(g)(1) and findings that the father was incarcerated at the time of the institution of the action and that he exhibited wanton disregard for the welfare of Arteria H. during the four months immediately preceding his incarceration and (2) pursuant to Tennessee Code Annotated § 36-1-113(g)(6) because the father was sentenced to eleven years of incarceration and Arteria H. was under the age of eight years at the time he was sentenced. *Id.* This Court ruled that these statutory grounds did not require reasonable efforts on the part of DCS or require a previous finding of dependency and neglect. *Id.* No specific reference was made to Tennessee Code Annotated § 37-1-166. *Id.*

Based upon our review of the specific language of Tennessee Code Annotated § 37-1-166, we respectfully disagree with the Court's conclusion reached in *In re Arteria H.*[1] DCS has a statutory duty to make reasonable efforts to "provide services related to meeting the needs of the child and the family" in order to "preserve and reunify families" even when the ground alleged is abandonment. Tenn. Code Ann. § 37-1-166(g)(2); *see In re Tiffany B.*, 228 S.W.3d 148, 160 (Tenn. Ct. App. 2007); *Dept. of Children's Servs. v. Stinson*, No. W2006-00749-COA-R3-PT, 2006 WL 3054604 at \*14 (Tenn. Ct. App. Oct. 30, 2006); *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726 at \*12 (Tenn. Ct. App. Aug. 13, 2003). As articulated in *In re B.L.C.* and its progeny, a determination that aggravated circumstances exist must be made by a court of competent jurisdiction *before* DCS can be relieved of its duty to exercise reasonable efforts toward family preservation and reunification pursuant to the statute. We find the line of cases following *In re B.L.C.* to be in accord with the legislature's clearly expressed intent regarding DCS's duty to make reasonable efforts in cases such as this.[2] We note, however, that in light of the constitutional

---

[1] The Western Section's later decision in *In re Steven P.D.*, 2012 WL 3025151 at \*9, noted above, appears to depart from this holding in *In re Arteria H.*

[2] *But see In re Dacia S.*, No. E2012-01337-COA-R3-PT, 2013 WL 709635 at \*9 (Tenn. Ct. App. Feb. 26, 2013); *In re Zada M.*, No. E2010-02207-COA-R3-PT, 2011 WL 1361575 at \*5 (Tenn. Ct. App. Apr. 11, 2011); *Dept. of Children's Servs. v. C.D.F.,* No. E2006-00668-COA-R3-PT, 2006 WL 3431927 at \*18 (Tenn.
(continued...)

dimension of the rights at stake in termination of parental rights actions, the significance of this issue may sufficiently warrant review by the Tennessee Supreme Court.

Based upon the plain language of Tennessee Code Annotated § 37-1-166(g)(4)(A) and this Court's opinion in *In re B.L.C.*, we conclude that the trial court erred in ruling that DCS did not have to make reasonable efforts to assist Father regarding reunification because DCS eventually proved, at the termination hearing, the allegation that Father abandoned Kaliyah by engaging in conduct exhibiting wanton disregard for her welfare prior to his incarceration.

## V. Reasonable Efforts by DCS

Father also argues that DCS failed to establish that it exercised reasonable efforts in this case. We have previously defined such reasonable efforts as:

> "the exercise of reasonable care and diligence by the department to provide services related to meeting the needs of the child and the family." T.C.A. § 37-1-166(g)(1) (2005). "Reasonable efforts entail more than simply providing parents with a list of service providers and sending them on their way. The Department's employees must use their superior insight and training to assist parents with the problems the Department has identified in the permanency plan, whether the parents ask for assistance or not." *In re C.M.M.*, 2004 WL 438326, at *7 (citing *In re D.D.V.*, No. M2001-02282-COA-R3-JV, 2002 WL 225891, at *8 (Tenn. Ct. App. Feb.14, 2002)). The Department's efforts, however, need not be "Herculean," and it is important to note that "the remedial responsibility does not rest solely on the Department's shoulders. Parents must also make reasonable efforts to rehabilitate themselves and to remedy the conditions that required them to be separated from their children." *Id.* (citing *In re R.C.V.*, No. W2001-02102-COA-R3-JV, 2002 WL 31730899, at *12 (Tenn. Ct. App. Nov.18, 2002)). The State has the burden of proving by clear and convincing evidence that its efforts at reunification were reasonable under all of the circumstances. *Id.* at *8; *see* T.C.A. § 36-1-113(c) (2005).

*State Dep't of Children's Servs. v. Estes*, 284 S.W.3d 790, 800-01 (Tenn. Ct. App. 2008).

In this case, the trial court made no findings regarding whether DCS exercised reasonable efforts to assist Father. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976)

---

[2](...continued)
Ct. App. Nov. 29, 2006).

("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ."). We must, therefore, remand this case for further hearing to afford DCS the opportunity either to present proof that reasonable efforts were exercised or to petition for a determination that prior to seeking termination, DCS was relieved of making reasonable efforts to assist Father. *See In re B.L.C.,* 2007 WL 4322068 at \*10.

## VI.  Conclusion

The judgment of the trial court terminating the parental rights of Father is reversed. Costs on appeal are taxed to the Department of Children's Services. This case is remanded to the trial court, pursuant to applicable law, for further proceedings consistent with this opinion and collection of costs.

_____
THOMAS R. FRIERSON, II, JUDGE